UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRO'S SPORTS BAR & GRILL, INC., d/b/a BR BAR AND STEAKHOUSE, THARON BRADLEY, <br><br>Plaintiffs, <br><br> v. <br><br> CITY OF COUNTRY CLUB HILLS, an Illinois Municipal Corporation and Body Politic, MAYOR JAMES W. FORD and AARON JONES. <br><br>Defendants. | Case No.: 1:20-cv-06087 <br><br> Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Pro's Sports Bar & Grill, Inc. ("Pro's Sports"), doing business as BR Bar and Steakhouse, and Tharon Bradley, the owner of Pro's Sports, filed a four-count amended complaint [14] on December 10, 2020, against Defendants the City of Country Club Hills, an Illinois Municipal Corporation and Body Politic, Mayor James W. Ford, and Aaron Jones, the Building Commissioner for Country Club Hills, alleging violation of due process pursuant to 42 U.S.C. § 1983 (Count I), violation of free speech pursuant to 42 U.S.C. § 1983 (Count II), and malicious prosecution (Counts III, IV). Defendants move to dismiss Plaintiffs' amended complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). [17]. For the reasons explained below, this Court grants in part, and denies in part, the motion to dismiss.

1

I.  **Background**

Pro's Sports is a bar and restaurant located in Country Club Hills. [14] ¶ 3. In 2008, Plaintiffs filed a complaint against Country Club Hills alleging that the city's issuance of a liquor license imposing new restrictions upon Pro's Sports' operating hours violated Plaintiffs due process rights. *Id.* ¶ 13. In the subsequent proceedings, Plaintiffs obtained a preliminary injunction that required the city to issue Plaintiffs a new liquor license restoring Pro's Sports previous operating hours. *Id.* ¶¶ 12–14; *see also Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, No. 08 C 6031, 2009 WL 995477, at *1 (N.D. Ill. Apr. 14, 2009), *aff'd*, 589 F.3d 865 (7th Cir. 2009). On appeal, the U.S. Court of Appeals for the Seventh Circuit upheld the injunction. [14] ¶ 14; *see also Pro's Sports*, 589 F.3d at 873.

Plaintiffs allege that Defendants retaliated against Plaintiffs as punishment for the 2008 litigation and preliminary injunction. [14] ¶¶ 25–26. On June 19, 2020, Defendant Jones prepared ticket number B6425634 which stated that Plaintiff Pro's Sports exceeded occupancy levels. *Id.* ¶¶ 7, 27. Plaintiffs allege that Pro's Sports was closed at the time listed on the ticket. *Id.* ¶ 28. Plaintiffs further allege that on August 21, 2020, Defendant Jones prepared ticket number B6429000 for Pro's Sports' purported failure to comply with local and state government decrees requiring Pro's Sports to close by midnight, when, in fact, no such restrictions were in effect on the date Defendant Jones issued the ticket. *Id.* ¶¶ 31–32. In November 2020, a hearing officer dismissed both tickets. *Id.* ¶¶ 29–30, 34.

Separate from the alleged retaliation, Country Club Hills restricted Plaintiff

Pro's Sports' opening hours in August 2020. Plaintiffs regularly renewed their liquor license from 2009 through 2020. *Id.* ¶ 15. Under the terms of the license, Pro's Sports may remain open until 2:00 a.m. Sundays through Thursdays and until 3:00 a.m. on Fridays and Saturdays. *Id.* On August 24, 2020, during a regularly scheduled meeting, Country Club Hills' city council passed an ordinance requiring all liquor license holders in the city to close by 12:00 a.m. on Sundays through Fridays and by 1:00 a.m. on Saturdays to reduce the spread of the COVID-19 virus. *Id.* ¶ 16; Country Club Hills, *Regular City Council Meeting Minutes for Meeting Held on August 24, 2020*, at 2–3 (2020), https://static1.countryclubhills.org/wp-content/uploads/2020/09/City_Council_Minutes_2020_08_24.pdf. The Country Club Hills city council passed the ordinance without providing Plaintiffs a hearing or other opportunity to contest the restrictions. [14] ¶ 17. Plaintiffs have lost income due to these restrictions. *Id.* ¶ 18.

Plaintiffs filed their initial complaint on October 13, 2020 alleging a violation of their procedural due process rights, then filed an amended complaint on December 10, 2020. [1]; [14]. Plaintiffs now allege that Defendants subjected them to further retaliation after October 13, 2020, in response to both this case and the 2008 litigation. [14] ¶ 35.

Specifically, Plaintiffs allege Defendant Jones ordered numerous corrections after inspections of Plaintiff Pro's Sports' kitchen, despite Plaintiffs having already passed all Cook County health inspections. *Id.* Defendant Jones also required Plaintiffs to make repairs to their newly installed roof, when, in fact, no state or local

3

law required such repairs. *Id.* After a windstorm knocked down a tent covering Plaintiffs' outdoor dining area, Defendant Jones required Plaintiffs to obtain a permit to repair the tent, when, in fact, no permit was required when Plaintiffs first raised the tent in March 2020. *Id.* Lastly, after Plaintiffs built a fence around a patio adjacent to Pro's Sports, Defendant Jones required Plaintiffs to reduce the height of the fence from six feet to four feet, even though local ordinances permitted six-foot-high fences, and to remove and replace certain panels, when, in fact, no state law or local ordinance required such action. *Id.*

Plaintiffs seek remedies including declaratory relief for violations of their due process rights and freedom of speech, temporary and permanent injunctive relief, compensation for lost income, punitive damages, and costs and fees. *Id.* ¶¶ 22, 35, 45, 51.

## II. Legal Standard

Defendants move to dismiss Plaintiffs' first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [17]. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," so the defendant has "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4

(2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)). Thus, "[t]hreadbare recitals of the elements of a cause of action" and mere conclusory statements "do not suffice." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 603 (7th Cir. 2019).

Rule 12(b)(6) also limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Courts may take judicial notice of documents that are part of the public record, such as municipal ordinances or minutes and agendas for city council meetings, without converting a 12(b)(6) motion to one for summary judgement. *See, e.g.*, *McBride v. McLean County*, 397 F. Supp. 3d 1198, 1206 (C.D. Ill. 2019).

### III. Analysis

Defendants move to dismiss in its entirety Plaintiffs' first amended complaint alleging violation of due process (Count I), violation of free speech (Count II), and malicious prosecution (Counts III, IV). [14];[17]. This Court considers each count in order below.

### A. Count I: Procedural Due Process Violation

The Fourteenth Amendment "explicitly prohibits" state actors "from depriving persons of 'life, liberty, or property, without due process of law.'" *Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016) (quoting U.S. Const. amend. XIV, § 1)). To properly allege a claim for "a procedural due process violation of a property right" under 42 U.S.C. § 1983, a plaintiff must "establish that there is (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607 (7th Cir. 2014) (quoting *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010)). New restrictions on the hours of operation linked to a specific liquor license can implicate cognizable property interests. *See Pro's Sports*, 589 F.3d at 870–72.

Here, Plaintiffs allege that Defendants violated their Fourteenth Amendment right to due process by reducing "the hours of operation under plaintiffs' liquor licenses . . . without a hearing or other process to contest said reduction." [14] ¶ 20. These allegations, however, lack important context; namely, that the restrictions at issue here resulted from the legislative process. Country Club Hills' city council passed the ordinance that restricted opening hours for *all* establishments holding

6

liquor licenses, not just Plaintiffs', at a regularly scheduled city council meeting held on August 24, 2020.[1]

In context, Plaintiffs' claim fails. When a "legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process." *Callahan v. City of Chicago*, No. 12 C 362, 2012 WL 5989341, at *4 (N.D. Ill. Nov. 29, 2012) (quoting *Brown v. Ret. Comm. of Briggs & Stratton Ret. Plan*, 797 F.2d 521, 527 (7th Cir. 1986)), *aff'd*, 813 F.3d 658 (7th Cir. 2016). In *Callahan*, the district court examined whether "lease and meter rate ordinances . . . enacted by a legislative body through the legislative process in a way that affects *all* persons engaged in the taxicab industry," but without individualized hearings regarding the regulations, violated an individual taxicab driver's procedural due process rights. *Id.* (emphasis added). As the district court noted, when "a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption." *Id.* (quoting *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915)). As a result, legislatures may pass statues that "affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard." *Id.* (quoting *Bi-Metallic*, 239 U.S. at 445). For these reasons, the court found it "clear" that the plaintiff could not "allege an absence of due process." *Id.*

---

[1] This Court properly takes judicial notice of these facts. *See* Country Club Hills, Ill., Ordinance No. O-07-20 (Aug. 24, 2020), https://static1.countryclubhills.org/wp-content/uploads/2020/10/4502_001.pdf; Country Club Hills, *Regular City Council Meeting Minutes for Meeting Held on August 24, 2020*, at 2–3 (2020), https://static1.countryclubhills.org/wp-content/uploads/2020/09/City_Council_Minutes_2020_08_24.pdf.

So too here. The Country Club Hills city council passed an ordinance of general applicability at a regularly held meeting. Plaintiffs do not allege, and nothing in the public record suggests, a defect in the legislative process. Accordingly, this legislative process satisfies the requirements of the Due Process clause. Because Plaintiffs fail to allege a violation of their procedural due process rights, this Court dismisses Count I of the First Amended Complaint.

### B. Count II: First Amendment Retaliation

To adequately plead a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Here, Plaintiffs allege that Defendants issued tickets and ordered Plaintiffs to take certain unnecessary corrective actions in retaliation for the lawsuit now before this Court and Plaintiffs' 2008 lawsuit that resulted in injunctive relief against the City of Country Club Hills. [14] ¶¶ 23–39. Before deciding whether these allegations sufficiently state a claim for First Amendment retaliation, however, this Court must first discuss the threshold issue of municipal liability as to the City of Country Club Hills.

Under § 1983, a municipality faces liability only if the plaintiff alleges unconstitutional conduct that "implements or executes a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval." *Monell v. Dep't of Soc. Svcs. of City of N.Y.*, 436 U.S. 659, 690–91 (1978). An alleged unconstitutional policy or custom giving rise to municipal liability may take one of three forms: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Liska v. Dart*, 60 F. Supp. 3d 889, 905 (N.D. Ill. 2014) (quoting *Chortek v. City of Milwaukee,* 356 F.3d 740, 748 (7th Cir. 2004)).

Here, Plaintiffs have pled no facts that would establish municipal liability with respect to their First Amendment retaliation claim. Plaintiffs make no effort to tie the alleged instances of retaliation, discussed in greater detail below, to a municipal custom or policy. Nor do they allege that "a person with final policymaking authority" caused the alleged instances of retaliation. And the alleged instances of retaliation, read alone, do not give rise to a plausible inference that the conduct was the product of an official policy or practice or that it was caused by a policymaker. Accordingly, this Court must dismiss Count II as to Defendant Country Club Hills. *See Mitchell v. City of Plano*, No. 16-cv-07227, 2018 WL 3819110, at *6 (N.D. Ill. Aug. 10, 2018) (dismissing First Amendment retaliation claim against municipal defendant where plaintiff pled "no *facts* to support a *Monell* theory of liability" and the alleged instances of retaliation did not "*plausibly* suggest" that the municipal

9

defendant had "an official policy or practice" that harmed the plaintiff). This Court now determines whether the alleged conduct constitutes a First Amendment retaliation claim as to the remaining defendants.

### 1. Protected Activity

Generally, a lawsuit that "complains of allegedly unconstitutional behavior by public officials" qualifies as protected activity, and thus, can form the basis for an "actionable" First Amendment retaliation claim. *Glatt v. Chicago Park District*, 87 F.3d 190, 193 (7th Cir. 1996). In this case, Plaintiffs alleged a violation of their procedural due process rights. [1] ¶¶ 15–16, 18. Similarly, in its 2008 suit against Country Club Hills, Plaintiff Pro's Sports alleged "a violation of both its procedural due process rights and its right to equal protection." *Pro's Sports*, 589 F.3d at 868. Accordingly, both this lawsuit and the 2008 lawsuit qualify as protected First Amendment activities.

### 2. Deprivation Likely to Deter

Next, this Court considers whether the deprivations alleged here were likely to deter further First Amendment activity. At the pleadings stage, this Court does not consider whether an alleged deprivation "would '*actually deter* a person of ordinary firmness.'" *Owens v. Duncan*, 788 F. App'x 371, 375 (7th Cir. 2019) (emphasis added) (quoting *Bridges*, 557 F.3d at 546). Allegations of "monetary fines," *Olympian Grp. LLC v. City of Markham*, No. 18-cv-04919, 2020 WL 5820024, at *10 (N.D. Ill. Sept. 30, 2020), "unfounded citations," *Germantown Cab. Co. v. Phila. Parking Auth.*, No. CIV.A. 14-2686, 2015 WL 4770722, at *6 (E.D. Pa. Aug. 12, 2015),

10

"failed inspections," *Schlessinger v. Chi. Hous. Auth.*, No. CV 14-4686, 2013 WL 2434704, at *5 (N.D. Ill. June 3, 2013), and "increased inspection and enforcement activity," *Safari Childcare Inc. v. Penny*, No. 17 C 8547, 2019 WL 3554993, at *8 (N.D. Ill. Aug. 2, 2019), plausibly state deprivations likely to deter further First Amendment activity.

Here Plaintiffs allege that Defendant Jones, during inspections of Plaintiff Pro's Sports, issued tickets for conduct that did not violate state or local law and ordered Plaintiffs to undertake repairs that, again, had no basis in state or local law. [14] ¶¶ 25–35. Plaintiffs further allege that Defendant Ford, as mayor of Country Club Hills, directed these acts of retaliation. *Id.* ¶ 36. These allegations of unfounded citations and increased surveillance more than sufficiently allege a deprivation likely to deter future First Amendment activity.

### 3. Motivating Factor

To establish that its First Amendment activity constituted a motivating factor in the defendant's decision to take retaliatory action, a plaintiff must allege "a causal link between the protected act and the alleged retaliation." *Roger Whitmore's Auto. Servs., Inc. v. Lake County*, 424 F.3d 659, 669 (7th Cir. 2005). Both "circumstantial evidence," like "suspicious timing, ambiguous oral or written statements, or behavior or comments," and "direct evidence," like "near-admissions" of retaliatory acts, "may serve as proof of causation." *Garner v. City of Country Club Hills*, No. 11-cv-5164, 2012 WL 3017966, at *2 (N.D. Ill. July 23, 2012) (citing *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 551 (N.D. Ill. 2011)). This issue of

11

causation "is generally 'a factual matter' that is 'best answered by the traditional finder of fact,' and not by a court at the pleading stage." *Carroll v. City of Oak Forest*, No. 19-cv-07412, 2020 WL 2526483, at *3 (N.D. Ill. May 18, 2020) (quoting *Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013)). But Plaintiffs must at least present a story that "holds together" on retaliation, *Wheeler v. Piazza*, No. 16-cv-3861, 2018 WL 835353, at *4 (N.D. Ill. Feb. 13, 2018), and Plaintiffs' here fail in some respects.

First, the record undermines Plaintiffs' theory that Defendants retaliated against them in 2020 for filing their 2008 lawsuit. *See* [14] ¶¶ 23–36. A long delay, eighteen months for example, between protected speech and an alleged deprivation (without more) renders "the two events 'simply too remote in time to infer'" that the protected speech was at least a motivating factor behind the deprivation. *Am. Civil Liberties Union of Ill. v. City of Chicago*, No. 75 C 3295, 2010 WL 3273279, at *7 (N.D. Ill. Aug. 13, 2010) (quoting *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 619 (7th Cir. 2001)); *see also Wheeler*, 2018 WL 835353, at *4 (noting that a "nine-month gap between" protected speech and "alleged retaliation is too large under Seventh Circuit precedent to sufficiently state, without more, a retaliation claim, even at the motion to dismiss stage); *Schlessinger v. Chi. Hous. Auth.*, No. 12 C 3733, 2012 WL 5520848, at *8 (N.D. Ill. Nov. 13, 2012) (finding that the "large time gap" defeated "any inference that" defendants "acted in retaliation" for plaintiff's earlier protected speech where the alleged actions "that might be construed as retaliatory occurred approximately two years after" the protected speech). Here, the

twelve-year gap between the protected speech and the alleged retaliation fails to raise a reasonable inference of causation based upon timing.

In their response to the motion to dismiss, Plaintiffs offer additional allegations that purportedly establish a retaliatory motive, *e.g.*, [23] at 9–10, facts that this Court may consider without converting this motion to dismiss into one for summary judgment, *see Makhsous v. Mastrioanni*, No. 19-cv-01230, 2021 WL 1143514, at *1 (N.D. Ill. Mar. 25, 2021) (noting that a plaintiff, unlike a defendant, "may supplement existing claims with additional factual allegations" in their response to a "motion to dismiss as long as the new facts are consistent with the original claims made in the complaint" (quoting *Adedeji v. Cobble*, No. 10 C 0892, 2013 WL 449592, at *2 (N.D. Ill. Feb. 5, 2013)). But these new allegations, consisting of four more instances of retaliation, do not alter this Court's analysis. Two of the alleged instances of retaliation take place after Plaintiffs filed this lawsuit, [23-1] ¶¶ 6–7, so they do nothing to bridge the gap between the protected speech in 2008 and the first instances of retaliation alleged in Plaintiff's amended complaint. Of the two remaining instances of retaliation, only one involves Defendant Ford or Defendant Jones. *Id.* ¶ 6. And, in any case, both of these instances (dating from 2015 and 2016) are similarly too remote to support a valid retaliation claim. [23-1] ¶¶ 5–6. Based upon the record (including the long delay between the alleged retaliation and Plaintiffs' original lawsuit), this Court dismisses Count II of the amended complaint to the extent it alleges retaliation for speech occurring in 2008.

13

Plaintiffs also claim that Ford and Jones retaliated against them for filing this lawsuit in October 2020. That claim remains viable to the extent Plaintiffs allege that Defendant Ford directed Defendant Jones to take retaliatory action against Plaintiffs after the filing of this lawsuit, namely by inspecting Plaintiff Pro's Sports and ordering various repairs that had no basis in state or local law. [14] ¶¶ 35–36. Although Plaintiffs fail to state when these retaliatory acts took place, this Court can infer from the filing dates in this matter that the alleged retaliation occurred within the two months following Plaintiffs' protected speech. [1]; [14]. Because circumstantial evidence, like the "suspicious timing" here, may suffice as "proof of causation," *Garner*, 2012 WL 3017966, at *2, Plaintiffs' claim survives at this stage. *Cf. Massey v. Johnson*, 457 F.3d 711 (7th Cir. 2006) (noting, upon appeal of district court's summary judgment ruling, that plaintiffs alleging First Amendment retaliation are "not required to come forward with direct evidence or 'the so-called smoking gun'" in order to "establish the defendant's retaliatory motive" (quoting *Lewis v. City of Boston*, 321 F.3d 207, 219 (1st Cir. 2003)).

This Court, however, dismisses Plaintiffs' claim to the extent they allege that Defendants engaged in retaliation prior to the date they filed this lawsuit in October 2020 (i.e., to the extent based upon the 2008 lawsuit and the tickets issued by Defendant Jones in June and August of 2020). [14] ¶¶ 27–34. Put simply, Defendants could not have retaliated against Plaintiffs for something that had not yet occurred.

14

### C.     Malicious Prosecution (Counts III & IV)

Plaintiffs also attempt to plead state-law malicious prosecution claims in Counts III and IV of their first amended complaint, based upon the tickets issued in June and August of 2020 for purported ordinance violations. To state a valid claim for "malicious prosecution under Illinois law, plaintiffs must establish five elements: (1) commencement or continuation of an original proceeding [by the defendant]; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017) (alteration in original) (quoting *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016)). If the claim is "based on civil proceedings" rather than criminal prosecution, the alleged malicious prosecution "must have resulted in 'special damage beyond the usual expense, time or annoyance in defending a lawsuit.'" *Shea v. Winnebago Cty. Sheriff's Dep't*, 746 F. App'x 541, 547 (7th Cir. 2018) (quoting *Howard v. Firmand*, 880 N.E.2d 1139, 1144 (Ill. 2007)). The absence of any one of "these elements bars a plaintiff's malicious prosecution claim." *Wilson v. Ill. Dep't of Fin. & Prof'l Regulation*, 376 F. Supp. 3d 849, 871 (N.D. Ill. 2019) (quoting *Beaman v. Freesmeyer*, 131 N.E.3d 488, 495 (Ill. 2019)).

Here, Plaintiffs' failure to allege special damages dooms their malicious prosecution claims. In Counts III and IV, Plaintiffs state that they have "incurred legal fees and costs" and that Plaintiff Bradley has "suffered emotional distress, anxiety and frustration for which he should be compensated" as a result of the tickets issued by Defendant Jones in June and August of 2020 and the attendant

15

administrative proceedings. [14] ¶¶ 43–44, 49–50. In other words, these alleged damages amount to the "usual expense, time or annoyance in defending a lawsuit" that falls short of special damages.

In their response to the motion to dismiss, Plaintiffs argue that the "prosecution of an ordinance violation . . . is sufficiently criminal in nature that it may provide the basis for a malicious prosecution claim without alleging a special injury." [23] at 10–12. This argument fails. Even if these administrative proceedings *were* criminal in nature, the law still would require Plaintiffs to allege special damages because they do not claim an arrest or the seizure of their property. *See Spicer v. Spicer*, Nos. 1-16-1378 & 1-16-1891, 2017 WL 6418308, at *9 (Ill. App. Ct. Dec. 14, 2017) (noting the "long-standing rule . . . that without the arrest of a person or the seizure of a person's property or some other special injury, a cause of action for malicious prosecution will not lie" (quoting *Reed v. Doctor's Assocs., Inc.*, 824 N.E.2d 1198, 1205 (Ill. App. Ct. 2005)); *cf. Burge v. Harvey Police Officers*, No. 97 C 4569, 1997 WL 610045 (N.D. Ill. Sept. 25, 1997) (finding that the "'special injury' requirement" did *not* apply because the alleged "malicious prosecution" was "based on a criminal prosecution *and* was accompanied by [the plaintiff's] arrest" (emphasis added)).

Because Plaintiffs have not alleged special damages in connection with their malicious prosecution claims, this Court dismisses Counts III and IV of the first amended complaint.

## IV. Conclusion

For the foregoing reasons, this Court grants in part, and denies in part, Defendants' motion to dismiss [17] the first amended complaint. This Court dismisses Count I with prejudice. This Court also dismisses Count II of the amended complaint without prejudice to the extent that it alleges (1) retaliation for protected speech occurring in 2008; (2) retaliatory action prior to October 13, 2020; and (3) any retaliatory action by Defendant the City of Country Club Hills. Count II remains viable only to the extent it alleges retaliatory conduct occurring after Plaintiffs filed their lawsuit in this case. Finally, this Court dismisses Counts III and IV without prejudice.

Dated: September 20, 2021

Entered:

_____
John Robert Blakey
United States District Judge